UNITED STATES DISTRICT COURT      SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| Kenyon International Emergency, Services, Inc. | § § § | |
| Plaintiffs, | § § | |
| versus | § § | Civil Action H-09-3550 |
| Mark Malcolm, *et al.*, | § § | |
| Defendants. | § § | |

# Opinion on Attorney's Fees and Arbitration

1.  *Introduction.*

     A group of former employees and their companies request attorney's fees and costs for Kenyon's failed effort to prevent them from competing against it anywhere, in any fashion, and for at least a year. Attorney's fees and costs will be awarded. Also, Kenyon wishes the court to compel arbitration. Its motion will be denied.

2.  *Background.*

     Kenyon International Emergency Services has sought to enjoin eight former employees and three of their companies for violations of competition and solicitation restrictions and the misappropriation of confidential information and goodwill, among other claims. At the injunction hearing on December 2, 2009, the temporary injunction was vacated and further injunctive relief wholly denied.

3.  *Attorney's Fees.*

     The defendants have asked for their attorney's fees and costs in defending against Kenyon's attempt to enforce a covenant not to compete that was unsupported by the contract, facts, or beyond rationality in its breadth. *See Texas Business and Commerce Code*, Section 15.51(c) (*Vernon's* 2005).

The non-competition clauses for Malcolm, Crane, Rock, and Marjorie Bray say,

> Team Member shall not . . . solicit for employment purposes, attempt to recruit, or hire directly . . . any other Team Member of [sic] employee of Kenyon.  Nor will Team members utilize their position with Kenyon or experience gained while working for Kenyon to solicit or obtain contracts or work that will compete with Kenyon for [sic] a period of at least one year has elapsed following termination of any Client contract on which Kenyon has worked in any commercial, management, advisory or technical capacity, whichever is the latter, without the prior written consent of the other party.

This court's opinion denying injunctive relief (78) explains that the non-competition clause is unreasonably broad on all three statutory measures – geography, time, and work.  Further, Kenyon demonstrated no investment in training that would justify any restriction.

Against Grady Bray, Kenyon sought to enforce an expired covenant and, by claiming conspiracy, attempted to enforce Malcolm's overly-broad contract against Bray.

Kenyon knew when the agreements were signed that the covenants were unreasonable. Kenyon's knowledge of the clause's baseless expansionism can be inferred from its breadth. The same covenant applied to two-day workers and multi-year ones equally.  That it is a worldwide restriction is open and obvious.  That it continues as long as the client has business with Kenyon is clearly excessive.  Kenyon knew what it taught people, where they had worked, and what they did.  Kenyon knew it was imposing total, gratuitous limits on people whom it did not equip, train, or imbue with its goodwill.  The non-competition clause is unreasonable on its face; Kenyon operated on no mistaken fact.

In the complaint, the injunctions, and the arguments, Kenyon attempted to enforce the noncompetition clause to the greatest extent possible.  In Kenyon's original verified complaint it "requests that this Court enforce [the] non-competition agreements *as worded* or, in the alternative, Kenyon requests that this Court enforce those covenants in a more geographically and time limited manner . . . ." Original Complaint ¶ 23 (emphasis added).  When Kenyon obtained initial injunctions in state court and in this court, it did not attempt to tailor the breadth of the restrictions. Before this court, Kenyon argued to enforce the agreement as it was

written.  Not until the sixth hour of the injunction hearing – after the court ruled it unenforceable as written – did Kenyon suggest a reformation.

A.    *Segregating Costs.*

Kenyon says it may be held liable only for the portion of costs and fees incurred in defending the covenant not to compete.  It says the defendants must segregate the time spent on the noncompetion question from the other claims Kenyon attempted to enjoin: solicitation, confidences, trade secrets, Lanham Act, unfair competition, and misappropriation of goodwill.

It is elemental that covenants not to compete restrain trade.  Examples of legitimate interests that may be protected by these covenants include trade secrets, confidential information, and customer goodwill.  Here, Kenyon has asserted so many interrelated theories that segregating them is not only impossible, but unnecessary because, despite their other labels, they were all used to prohibit competition without justification.

Non-solicitation clauses are sometimes treated distinctly.  They, however, frequently restrain competition in labor and product markets.  When used to restrict trade – as Kenyon's are – restrictions against solicitation are covenants not to compete.  *See Edwards v. Arthur Andersen, LLP*, 44 Cal. 4th 937, 948 (2008); *Dowell v. Biosense Webster, Inc.*, 102 Cal.Rptr.3d 1, 9 (Cal. Dist. Ct. App. 2009).  Likewise, the claim of misappropriation of goodwill is used to restrict competition because of the workers' experience with customers, and here Kenyon did not show that the defendants were imbued with its goodwill.

Confidentiality agreements are covenants not to compete with proprietary information.  They are legitimate when used to protect truly proprietary information.  Kenyon, in contrast, attempted to restrict the defendants' use of their experience. Experience is not confidential.  Without confidences, Kenyon's confidentiality agreement impermissibly restricts competition, and attorney's fees lie under Section 15.51. More important, the defense attorneys focused very little of their time on the confidentiality issue because the evidence demonstrated that the defendants, except Grady Bray, had no confidences.

Kenyon also insists that conspiracy, trade secrets, Lanham Act, and common law unfair competition are also claims that must be distinguished.  The common law claims were superceded by statute, and the attorneys did not focus on these miscellaneous claims when contesting the injunction.  All their efforts up to this point have been aimed at preventing Kenyon from putting their clients out of business.  Kenyon may not defeat or make the fee claim counter-productive by the simple act of having over-pleaded the case at the start.  Kenyon

listed every plausible legal theory, but the costs were generated by its application for emergency from competition.

B.    *Accounting.*

The attorneys F. Barham Lewis, Jr., James R. Staley, and Matt Dudley McCormick have charged their customary fee by time; Lawrence J. Behrmann reduced his usual fee for Crane. While the legal issues were not particularly difficult, the case is factually complex. Kenyon clamorously accused eight people with five contracts and varied work histories. Kenyon's emergency motions for an injunction required the defendants' attorneys meet short deadlines, and they successfully defended their clients against a temporary injunction.

The defendants will be awarded their fees and costs for the state court suit that Kenyon brought then nonsuited and for the litigation in this court because the two suits are a single, continuous assault without justification on the defendants' ability to work in their fields.

Fees for attending the hearing on February 23, 2010, will be reduced by 10% to reflect the time spent on issues other than attorney's fees. McCormick did not give the court invoices for his preparation and attendance at the hearing; the court estimates he prepared for three hours and will split his preparation and hearing time equally among his six clients.

(1)    *Malcolm.*

Malcolm and Disaster will be awarded $89,085.95.

(2)    *Crane.*

Crane will be awarded $17,582.00.

(3)    *The Brays.*

Grady and Marjorie Bray will be awarded $26,708.53.

(4)    *The Fairbrothers.*

James and Sharon Fairbrother will be awarded $1,574.

(5)    *Hawley.*

Hawley will be awarded $787.

(6)     *Rock.*

Rock will be awarded $787.

4.     *Arbitration.*

A.     *Unenforceable Contract.*

While normally the validity of the contract is for the arbitrator to decide, Kenyon has forced the court and the defendants to litigate it in the preliminaries.  Kenyon says the court should compel arbitration because the defendants' contracts require it.  For seven of the eight defendants – Malcolm, Crane, Hawley, James Fairbrother, Sharon Fairbrother, Kathryn Rock, and Marjorie Bray – an arbitration clause is in a document called a consultive agreement.

The court did not consider Rock's consultive agreement when denying the injunction on December 2, 2009; Kenyon had not included it in the record.  Kenyon furnished it for the first time with its motion to compel arbitration.  Kenyon's only basis for forcing her to arbitrate is in this late-produced document.

In their consultive agreements, these defendants made unilateral promises to stand-by and work for Kenyon when it called.  Kenyon made no reciprocal promise ever to activate them or compensate them for standing-by.  For lack of consideration the agreement is unenforceable.

Kenyon says that by activating them it cured the absence of consideration, but this argument is unpersuasive.  Whatever agreement the parties may have had was superceded by the contracts the workers signed when they were activated.

The court will not compel arbitration because no valid arbitration agreement exists for these seven defendants.

B.     *Waiving Arbitration.*

Grady Bray agreed to arbitrate if mediation failed.  Kenyon, Bray, and the others mediated in November 2009, without settling.

The right to arbitrate may be waived.  In this jurisdiction among others, prejudice is the determinative factor in waiving arbitration.  When a party harms its opponent by litigating arbitrable issues, it waives its right to arbitration.  *Petroleum Pipe Americas Corp v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009) (citing *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 576 (5th Cir. 1991)).  *See also  Ebleiter v. Grapetree Shores, Inc*, 482 F.3d 207, 222-23 (3d Cir. 2007); *Kramer v. Hammond*, 943 F.2d 176, (2d Cir. 1991).  Other jurisdictions find waiver

when the party has acted inconsistently with its right to arbitration.  *National Foundation for Cancer Research v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 774 (D.C. Cir. 1987); *Reid Burton Constr., Inc. v. Carpenters Dist. Council*, 614 F.2d 698, 702 (10th Cir. 1980).

(1)     *Judicial Process.*

On October 12, 2009, Kenyon sued Malcolm, Crane, Grady Bray, and Malcolm's and Bray's companies in the 151st Judicial District Court of Harris County.  The same day, the court temporarily restrained them ex parte.  On October 22, the court compelled arbitration despite Kenyon's opposition.  In opposing arbitration, Kenyon argued that the arbitration clause in Malcolm and Crane's consultive agreements had been voided by the later activation agreements.  Twelve days later, Kenyon non-suited the case and refiled it here.  Kenyon requested an immediate injunction, but not one *in aid of* arbitration.  Rather, in its complaint, Kenyon explicitly said it was not invoking arbitration. Malcolm and Disaster initially requested this court to compel arbitration, but they have withdrawn that request and now oppose it.

A party generally invokes the judicial process by initially pursuing litigation then reversing course and attempting to arbitrate those claims.  *See Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 476, 484 (5th Cir. 2002).  In filing suit twice, in opposing then equivocating about arbitration, and by withdrawing from an arbitration when compelled, Kenyon has twice elected litigation over arbitration.  It has argued the merits of some of its claims and demonstrated a desire to litigate. Kenyon has changed its mind after adverse rulings, but it cannot erase its past elections and the quantity of litigation it forced the defendants to bear.

(2)     *Harm.*

To waive arbitration, a party must unfairly harm the opposing party by causing delays, expense, or damage to its legal position by forcing the party to litigate, rather than arbitrate the same issue.  *Petroleum Pipe Americas Corp*, 575 F.3d at 480.  The amount of discovery undertaken, the promptness of a party's request to arbitrate, and the expense and time incurred in the opponent's defense may be considered in determining the injury.  Here, to evaluate the merits of the claims for the injunction hearing, the parties undertook significant discovery – papers and depositions. Because Kenyon spent four months litigating this case and was at least silent on arbitration, it has not punctually asserted its desire to arbitrate.  Rather, it opposed

arbitration, rejected arbitration, then refiled its case in this court without asking for arbitration until it was denied an injunction.

The disparate facts of eleven defendants and multiple contracts make this case complex. Considerable time is required to sift through Kenyon's web of postures and accusations as well as to master each defendant's situation. Kenyon has asked two courts to do that and now tries to duck away from the mess it has made to start fresh before a third tribunal. This court is familiar with Kenyon's business, its layers of contracts, the eleven defendants, and the facts as they relate to each part and the whole. The merits of the case were nearly fully litigated at the injunction hearing. Moving the case yet again would force the defendants to repeat their efforts.

In forcing Bray – and the others – to incur significant costs, undertake considerable discovery, and extensively litigate their positions, Kenyon has waived any right it may have had to compel arbitration.


(3)     *Inconsistency.*

Additionally, Kenyon has waived its opportunity to arbitrate by acting inconsistently with that privilege. Twice it has invoked litigation; first it actively opposed arbitration, then lapsed into ambivalence, and now it demands to arbitrate. Kenyon's actions imply that its oscillating moods are dictated not by an authentic desire to arbitrate provision, but rather to seek to a more favorable ruling from a new forum.


5.     *Conclusion.*

Kenyon owes the defendants attorney's fees and costs for attempting to restrict unreasonably the defendants from competing against it.

Kenyon's motion to compel arbitration will be denied.


Signed on June 7, 2010, at Houston, Texas.


Lynn N. Hughes
United States District Judge